**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **ECHO ENERGY PARTNERS I, LLC** | ) Case No. 20-31920 |
| | ) |
| Debtor. | ) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE (I) RETENTION OF OPPORTUNE, LLC AS RESTRUCTURING ADVISOR , (II) DESIGNATION OF GREGG LASWELL AS CHIEF RESTRUCTURING OFFICER, AND (III) GRANTING RELATED RELIEF**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney**

Echo Energy Partners I, LLC, the above-captioned debtor in possession (the "Debtor") respectfully states the following in support of this motion (the "Motion"):

1.  By this Motion, the Debtor hereby seeks entry of an order, substantially in the form attached hereto (the "Order"), authorizing the Debtor to (a) retain and employ Opportune, LLP ("Opportune") as restructuring advisor, (b) designate Gregg Laswell as Chief Restructuring Officer ("CRO") pursuant to the terms of the engagement letter by and between the Debtor and Opportune, dated as of February 17, 2020 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Order, and (c) granting related relief. In support of this motion, the Debtor submits the declaration of Gregg Laswell, a Director at Dacarba LLC ("Dacarba"), a subsidiary of Opportune (the "Laswell Declaration"), attached hereto as **Exhibit A**.

#6144344

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). The Debtor confirms their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are Sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rule 2002(a)(2), Rule 2002-1(a)(2) of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## III. BACKGROUND

4. On March 24, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A full description of the Debtor's business, corporate structure, prepetition indebtedness, and events leading to this chapter 11 case is set forth in the *Declaration of Gregg Laswell, Proposed Chief Restructuring Officer of Debtor, in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"), incorporated herein by reference.

5. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no

trustee or examiner has been requested in this chapter 11 case, and no committees have been appointed or designated.

## IV. RELIEF REQUESTED

6. By this Motion, the Debtor seeks entry of the Order authorizing the Debtor to (i) employ and retain Opportune as restructuring advisor and (ii) designate Gregg Laswell as the Debtor's Chief Restructuring Officer in accordance with the terms of the Engagement Letter.

## V. OPPORTUNE'S QUALIFICATIONS

7. The Debtor understands that Opportune has a wealth of experience in providing interim management services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

8. Opportune's professionals have provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases. *In re Alta Mesa Resources, Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex. March 2, 2020); *In re Halcón Resources Corporation*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2019); *In re Sheridan Holding Company II, LLC*, Case No. 19-35198 (MI) (Bankr. S.D. Tex. Oct. 16, 2019); *In re Vanguard Natural Resources, Inc.*, Case No. 19-31786 (DRJ) (Bankr. S.D. Tex. May 14, 2019); *In re Gastar Exploration Inc.*, Case No. 18-36057 (MI) (Bankr. S.D. Tex. Dec. 20, 2018); *In re Energy XXI Ltd.*, Case No. 16-31928 (Bankr. S.D. Tex. June 7, 2016).

9. Mr. Laswell, who will act as CRO for the Debtor, has significant experience as a restructuring professional. He has worked on the financial advisory team supporting both Debtors and lending institutions through in-court and out of court restructurings including chapter 7 and chapter 11 cases. He has a variety of skills including 13-week cash-flow modeling, plan negotiation, liquidity management, first day bankruptcy filings, complex financial modeling, and

financial planning/reporting through the bankruptcy process. Mr. Laswell's relevant experience includes major onshore and offshore E&P companies and various oilfield service and construction companies that support the oil and gas industry. While at Dacarba, Mr. Laswell has also worked on IPO readiness, buy side due diligence, and financial reporting matters. Most Recently, Mr. Laswell served as crisis manager to Burkhalter Rigging, Inc.

10. The Opportune professionals who will work on this matter (the "Opportune Personnel") also have substantial expertise in creating and implementing business planning models and complex cash management programs to improve liquidity, and, if this Motion is approved, will provide services to the Debtor pursuant to the terms of the Order. The Opportune Personnel will work closely with the Debtor's management and professionals throughout the reorganization process. By virtue of the expertise of its restructuring personnel, Opportune is well qualified to provide services to the Debtor and represent the Debtor's interests in these chapter 11 cases.

11. The Debtor seeks the retention of Opportune because of Opportune's experience and reputation for providing restructuring services in chapter 11 cases such as those listed above. Furthermore, Opportune performed significant prepetition work for the Debtor, working closely with the Debtor's management and other advisors, acquiring significant knowledge of the Debtor and their businesses, and becoming familiar with the Debtor's financial affairs, debt structure, operations, and related matters. The same professionals who performed significant prepetition services to the Debtor will provide post-petition services to the Debtor pursuant to the terms of the Order. Accordingly, Opportune has experience, expertise, and specifically relevant knowledge regarding the Debtor that will assist it in providing effective and efficient services in these chapter 11 cases. The Debtor submits that the designation of Gregg Laswell as CRO and the retention of Opportune on the terms and conditions set forth herein are necessary and appropriate, in the best

interest of the Debtor's estates, creditors, and all other parties in interest, and should be granted in all respects.

## VI. SERVICES TO BE RENDERED[1]

12. The Debtor and Opportune entered into an Engagement Letter, which governs the relationship between them. The terms and conditions of the Engagement Letter were negotiated between the Debtor and Opportune and reflect the parties' mutual agreement as to the substantial efforts that will be required under this engagement.

13. Generally, the CRO, reporting to the Debtor's Chief Executive Officer and Independent Manager, and Opportune shall perform services to assist the Debtor throughout the Debtor's chapter 11 process. Working collaboratively with the senior management team, the Board of Managers and other Debtor professionals, Mr. Laswell will assist the Debtor in evaluating and implementing strategic and tactical options through the restructuring process. In addition to the ordinary course duties of a CRO, the Opportune Personnel roles may include working with the Debtor to do the following:

    (a)    <u>General Reorganization Efforts</u>

        (1)    Assistance with the preparation of financial and other information for distribution to stakeholders and others, including, but not limited to: short term cash flow projections and budgets, mid/long term business case, cash receipts and disbursement analysis, and analysis of various asset and liability accounts;

        (2)    Analysis of proposed transactions;

        (3)    Assistance with the identification and implementation of short-term cash management procedures;

---

[1] To the extent that the Debtor wishes to expand the scope of Opportune's services beyond those services set forth in the Engagement Letter or this Application, the Debtor will seek further approval from the court.

  (4) Assistance to management, counsel, and other advisors focused on the coordination of resources related to ongoing reorganization efforts;

  (5) Attendance at meetings and assistance in discussions with potential investors, banks, other secured lenders, any committees, and other stakeholders and assistance with respect to due diligence requests from the same;

  (6) Certain tax advisory services;

  (7) Certain fresh start accounting and valuation services; and

  (8) Other general financial and restructuring advisory services as mutually agreed by the Company and the CRO.

(b) <u>Bankruptcy Advisory Services</u>: In the event the Company seeks to file for chapter 11 bankruptcy protection, the CRO will assist in the preparation for such filing and advise the Company during its chapter 11 proceedings in respect of the following, which may include, as applicable, certain services contemplated in the General Reorganization Efforts above:

  (1) Assistance in the preparation of bankruptcy documents, including "first day" motions;

  (2) Development of forecasts and information for obtaining bankruptcy court approval of use of cash collateral or debtor-in-possession ("<u>DIP</u>") financing and related compliance reporting;

  (3) Assistance in the preparation of financial related disclosures required by the Bankruptcy Court (the "<u>Court</u>"), including but not limited to Schedules of Assets and Liabilities, Statements of Financial Affairs, and Monthly Operating Reports;

  (4) Assistance in the preparation of financial information including cash flow forecasts, long term business plans, and other key information;

  (5) Assistance with respect to mortgages and lien perfections;

  (6) Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

  (7) Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

(8) Assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in such chapter 11 proceeding(s), including information contained in the plan and disclosure statement;

(9) Assistance in the analysis/preparation of information necessary to assess the tax attributes related to the confirmation of a plan of reorganization in these chapter 11 cases, including the development of the related tax consequences contained in the disclosure statement;

(10) Litigation advisory services with respect to accounting and tax matters;

(11) Expert and factual witness testimony on case related issues, to be given at any hearings and the meeting of creditors and equity holders pursuant to 11 U.S. Code § 341, and to be billed at the standard hourly rates described below;

(12) Ongoing support with respect to managing the day-to-day requirements of the bankruptcy process; and

(13) Rendering such other general financial, restructuring, and business consulting or such other assistance management or counsel may deem necessary consistent with the role of a financial and operational advisor to the extent that it would not be duplicative of services provided by other professionals in such proceeding.

(c) <u>Sell-side Advisory Services:</u> In the event the Company seeks to market its assets for a potential sale, Opportune Partners will assist in the disposition of assets and advise the Company during the disposition process in respect of the following:

(1) Familiarization with the business, operations, properties, financial condition, and prospects of the Company;

(2) Review the Company's financial condition and outlook;

(3) Assist in the development of financial data and presentations to various creditors and other parties;

(4) Preparation of term sheets, purchase and sale agreements and closing documents;

(5) Performance of analysis of to assess asset quality such as reserve reports, cash flows, operations, and product marketing;

(6) Performance of buyers universe search;

(7) Creation and maintenance of virtual data room;

(8) Evaluate the Company's debt capacity and alternative capital structures;

(9) Participate in negotiations with the Company and its creditors, suppliers, lessors, and other interested parties with respect to any of the transactions contemplated;

(10) Identify and assist the Company in evaluating other potential strategic alternatives, including a business combination or acquisition transaction;

(11) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated herein, as requested and mutually agreed upon.

## VII.  **NO DUPLICATION OF SERVICES**

14. The services provided by Opportune will complement, but not duplicate, the services to be rendered by other professionals retained in this chapter 11 case.

## VIII.  **TERMS OF RETENTION**

15. Opportune's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment as CRO, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in Schedule 1 of the Engagement Letter (the "Fee and Expense Structure").

16. Opportune's current standard hourly rates for 2020, subject to periodic adjustments, are as follows:

#6144344

| Position | Hourly Rate |
|---|---|
| Managing Partner | $1,150 |
| Partner | $1,050 |
| Managing Director/CRO | $875 |
| Directors | $775 |
| Managers | $685 |
| Senior Consultants | $515 |
| Consultants | $450 |
| Administrative Professional | $275 |

17. In the normal course of business, Opportune may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first-time period in which the revised rates became effective.

18. In addition to compensation for professional services rendered by Opportune Personnel, Opportune will seek reimbursement for all reasonable out-of-pocket expenses incurred in connection with this chapter 11 case, such as travel, lodging, and meals. Opportune will bill for its fees and out-of-pocket expenses on a bi-weekly basis and the Company agrees to remit in full the payment of such fees and expenses promptly upon the receipt of any bill or invoice submitted by or on behalf of Opportune

19. Additionally, the Company shall pay Opportune a deferred restructuring fee (the "Deferred Restructuring Fee") of $250,000 in cash on the effective date of a Restructuring Transaction as set forth below.

(a) Restructuring Transaction is defined as any recapitalization, refinancing or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's equity and/or debt securities and/or other indebtedness, obligations, or liabilities (including preferred stock, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), however such result is achieved, including, without limitation, through any one or more of the following means, either directly or indirectly, and whether in one or a series of transactions: through a confirmed plan in the

>Chapter 11 Case, conversion to chapter 7, exchange offer, tender, waiver, amendment, consent solicitation, rescheduling of debt maturities, change in interest rates, settlement or forgiveness of debt, conversion of debt and/or other liabilities into equity, issuance of new securities, raising of new debt or equity capital (including amounts raised from the current debtholders and/or equity holders and including where raised solely for the purpose of avoiding defaults under existing credit agreements), or sale or other transfer, directly or indirectly, of equity, control, assets, or other interests of the Company whatsoever, whether in one or a series of transactions, acquisitions, mergers or other business combinations; or other similar transaction or series of transactions.

20. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by Opportune and other comparable firms that render similar services under similar circumstances. The Debtor believes that the Fee and Expense Structure is reasonable, market-based, and designed to compensate Opportune fairly for its work and to cover fixed and routine overhead expenses.

21. Opportune will submit monthly invoices to the Debtor, and the Debtor requests authority to pay, in the ordinary-course of business, all reasonable amounts invoiced by Opportune for fees and expenses.

22. Upon approval of the relief requested, Opportune will not be employed as a professional under Section 327 of the Bankruptcy Code, and it will not submit fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code. Opportune will, however, file with the Court, and provide reports of compensation earned and expenses incurred on a monthly basis ("Compensation Reports") to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) any statutory committee; (c) Texas Capital Bank, National Association as administrative agent under the Debtor's prepetition revolving credit facility; (d) HPS Investment Partners, LLC, as administrative agent under the prepetition note purchase agreement; and (e) counsel to the parties referenced in clauses (c) to (d) (collectively, the "Notice Parties"). The

Notice Parties shall have ten days after the date each Compensation Report is served upon them to object. Such compensation and expenses will be subject to Court review in the event an objection is filed.

23. Opportune may from time to time add or remove staff, and Opportune will file and serve on the Notice Parties staffing reports that will reflect the Opportune Personnel that provided services on a monthly basis (the "Staffing Reports"). Opportune will file and serve the Staffing Reports within 30 days after the end of each month. Staffing Reports will include the names of all full- and part-time Opportune Personnel involved in these chapter 11 cases and each individual's hourly billing rate. The Notice Parties shall have ten days after the date each Staffing Report is served upon them to object. The Staffing Reports and Opportune's staffing decisions will be subject to review by the Court in the event an objection is filed.

24. Opportune received unapplied advance payments from the Debtor in the amount of $150,000 (the "Retainer") prior to the Petition Date. This amount shall be carried by Opportune (but not in a separate bank account) and credited against any amounts due at the termination of this Engagement. At Opportune's reasonable request, the Company agrees it will refresh the Retainer from time to time such that the Retainer will at all times exceed any outstanding and unpaid fees.  Opportune and the Debtor are sophisticated business entities that have negotiated the Retainer at arm's length. As such, the Debtor respectfully requests that approval of the proposed retainer is warranted.

25. According to Opportune's books and records, during the 90-day period prior to the Petition Date, the Debtor paid Opportune and affiliates $98,697.89, including a $25,000.00 retainer, in aggregate for professional services performed and expenses incurred pursuant to the terms of the engagement letter by and between Hall Estill, the Debtor, and Opportune, dated as of

December 20, 2019 (the "Young Engagement Letter"), a copy of which is attached as **Exhibit B** to this Motion.

26. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to the Petition Date, Opportune may have incurred, but not billed, fees and reimbursable expenses that relate to the pre-petition period. Approval is sought from this Court for Opportune to apply the Retainer to these amounts. Upon entry of an Order approving the relief requested herein, the Debtor will not owe Opportune any sums for pre-petition services.

## IX. OPPORTUNE'S DISINTERESTEDNESS

27. To the best of the Debtor's knowledge and except to the extent disclosed herein and in the Laswell Declaration: (a) Opportune has no connection with the Debtor, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or U.S. Trustee or any person employed in the Office of the U.S. Trustee and (b) does not hold any interest adverse to the Debtor's estate.

28. Although the Debtor respectfully submits that the retention of Opportune is not governed by Section 327 of the Bankruptcy Code, the Laswell Declaration shows that Opportune is a "disinterested person" as that term is defined by Section 101(14) of the Bankruptcy Code. The Laswell Declaration discloses certain connections with creditors, equity security holders, and other parties-in-interest in these chapter 11 cases. Opportune does not believe that any of these matters represent an interest materially adverse to the Debtor's estate or otherwise create a conflict of interest regarding the Debtor or this chapter 11 case. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Opportune's retention

are discovered or arise, Debtor submits that Opportune will use reasonable efforts to file promptly a supplemental declaration.

## X. INDEMNIFICATION

29. The Debtor is permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable state law, and such persons are entitled to insurance coverage under the Debtor's D&O policy (collectively, the "Indemnification Provisions"). The Indemnification Provisions described in this Motion supersede and replace any provision of the Engagement Letter related to the indemnification of Opportune or any other related person or entity, including, but not limited to, the applicable provisions of Paragraph 4 of the General Terms and Conditions of the Engagement Letter.

## XI. BASIS FOR RELIEF

30. The Debtor seeks to employ and retain Opportune and appoint Mr. Laswell as CRO pursuant to Sections 105 and 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175

(Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

31. Additionally, Section 105(a) of the Bankruptcy Code provides this Court with the power to grant the relief requested herein. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). 39. The decision to retain Opportune and employ Mr. Laswell as CRO should be authorized because it is a sound exercise of the Debtor's business judgment. As set forth above, Mr. Laswell has extensive experience as a senior officer and advisor for many companies undertaking restructuring efforts, and the Opportune Personnel are well qualified and equipped to assist in CRO duties. Opportune, and Mr. Laswell in his capacity as CRO, will provide services that are in the best interests of all parties in interest in these chapter 11 cases.

32. Courts in this district and others have approved relief similar to the relief requested herein. See e.g., *In re Epic Companies, LLC*, Case No. 19-34752 (DRJ) (Bankr. S.D. Tex. Sept. 10, 2019); *In re Shale Support Global Holdings, LLC*, Case No. 19-33884 (DRJ) (Bankr. S.D. Tex. Aug. 8, 2018); *In re Weatherly Oil & Gas, LLC*, Case No. 19-31087 (MI), (Bankr. S.D. Tex. July 8, 2019); *In re Westwind Manor Resort Association, Inc.*, Case No. 19-50026 (DRJ) (Bankr. S.D. Tex. Apr. 2, 2019); *In re Francis Drilling Fluids, Ltd.*, Case No. 18-35441 (MI) (Bankr. S.D. Tex. Nov. 1, 2018); *In re Midway Oilfield Constructors, Inc.*, Case No. 18-34567 (MI) (Bankr. S.D. Tex. Oct. 24, 2018); *In re Neighbors Legacy Holdings, Inc.*, Case No. 18-33836 (MI) (Bankr. S.D.

Tex. Aug. 16, 2018); *In re Lockwood Holdings, Inc.*, Case No. 18-30197 (DRJ) (Bankr. S.D. Tex. Feb. 16, 2018).

## XII. **NOTICE**

33.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) any statutory committee; (c) Texas Capital Bank, National Association as administrative agent under the Debtor's prepetition revolving credit facility; (d) HPS Investment Partners, LLC, as administrative agent under the prepetition note purchase agreement; and (e) counsel to the parties referenced in clauses (c) to (d).; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtor conducts business; and (j) all parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Bankruptcy Rules. The Debtor submits that, under the circumstances, no other or further notice is required.

## **PRAYER**

WHEREFORE, premises considered, the Debtor respectfully requests that the Court grant the Motion, authorize the Debtor to retain Opportune, LLC as its restructuring agent, designate Greg Laswell as Chief Restructuring Officer, and grant such other and further relief as is just and proper.

Respectfully Submitted,

**BRACEWELL LLP**

By: */s/ William A. (Trey) Wood III*
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bracewell.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bracewell.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

**PROPOSED COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION**

#6144344

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on April 2, 2020, a true and correct copy of this document was served by electronic means as listed on the Court's ECF noticing system and, where available, via electronic mail upon all parties on the attached Master Service List.

                                  */s/ William A. (Trey) Wood III*
                                  William A. (Trey) Wood III

#6144344